Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

Attorneys for Defendant National Gypsum
Company

Brian R. Booker (#015637)
Brian.Booker@quarles.com
Alison Pulaski (#025699)
Alison.Carter@quarles.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Yee, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>National Gypsum Company; Lowe's Companies, Inc.; and Does 1-100,<br><br>　　　　Defendants. | NO. 3:09-cv-08189-DGC<br><br>**MOTION TO DISMISS OF NEW NGC, INC. D/B/A NATIONAL GYPSUM COMPANY**<br><br>[Assigned to the Hon. David G. Campbell] |

New NGC, Inc., doing business as National Gypsum Company, respectfully moves

the Court, pursuant to Rule 12(b)(6) and 9(b), Federal Rules of Civil Procedure, to dismiss

the claims asserted against them by Raymond Yee in his putative Class Action Complaint.

This Motion is supported by the attached Memorandum of Points and Authorities.

DATED this 22nd day of January, 2010.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391

By /s/ Alison Pulaski
　　Brian R. Booker
　　Alison Pulaski
*Attorneys for Defendant National Gypsum*
*Company*

QB\690022.00013\9593602.2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This lawsuit is premised on an allegation that drywall manufactured by National Gypsum and other American-made drywall is "defective."  The Complaint's allegations resemble those at issue in MDL No. 2047, In re: Chinese-Manufactured Drywall Products Liability Litigation, where more than 3,000 plaintiffs allege that their Chinese-manufactured drywall emits excessive amounts of sulfur.  National Gypsum, however, is not a party to MDL No. 2047 and has not manufactured, sold, imported or otherwise distributed any Chinese-manufactured drywall, and Plaintiff has not alleged otherwise. This lawsuit seeks to repackage the allegations in the Chinese-manufactured drywall litigation and direct them toward National Gypsum's drywall, a different product that is designed, manufactured and sold independent of Chinese manufacturers and their affiliates.  This is the first lawsuit of its kind against National Gypsum - and for good reason.

The Consumer Product Safety Commission is leading an ongoing multi-agency initiative to investigate assertions regarding allegedly defective drywall in the United States:

> CPSC is leading a federal drywall team to investigate the corrosion and health issues presented by the imported drywall. The federal team, which includes the Environmental Protection Agency (EPA), the Centers for Disease Control and Prevention (CDC)/Agency for Toxic Substances and Disease Registry (ATSDR), the U.S. Department of Housing and Urban Development (HUD), and U.S. Immigration and Customs Enforcement (ICE), coordinates regularly with state partners, including state departments of health and attorneys general. CPSC, EPA, CDC/ATSDR, HUD and ICE have weekly calls to discuss and share information about the investigation and to review technical data.  Since the beginning of the investigation, it has been apparent that some answers to the cause of the drywall problem will have to come from sources in China through cooperation with the Chinese government.
>
> . . . .
>
> [T]he CPSC will continue to work aggressively with its federal partners for scientific data that links specific emissions

-2-

1   from the drywall to the reported corrosion and health issues.

2   CPSC, Imported Drywall Fact Sheet (Sept. 2009) (attached hereto as Exhibit 1), available

3   at http://www.cpsc.gov/info/drywall/oct2009status.pdf.[1]

4       The governmental analyses performed to date comparing Chinese-manufactured

5   drywall to American-made drywall, including National Gypsum drywall, report that (1)

6   there is a clear difference in the composition of Chinese-manufactured drywall and

7   American-made drywall; and (2) Chinese-manufactured drywall contains substantial

8   levels of sulfur, whereas no sulfur has been found in American-made drywall, including

9   National Gypsum drywall.   Further, none of the published government reports has

10   concluded that American-made drywall has caused or can cause the conditions that are

11   reportedly present in homes with problematic Chinese-made drywall and that Plaintiff

12   theorizes may be present in homes with American-made drywall.

13       For example, as part of the ongoing drywall investigation, the Environmental

14   Protection Agency conducted an elemental analysis of Chinese-manufactured drywall and

15   American-made drywall (including National Gypsum drywall) and concluded that,

16   contrary to Plaintiff's speculation that "American Drywall contains high levels of sulfur,"

17   American-made drywall did not contain detectable levels of elemental sulfur:

18       With CDC-ATSDR's concurrence, two wallboard samples
     from Florida houses known to have been manufactured in
19   China were selected by the Florida Department of Health
     (FDOH) for analysis. Additionally, four samples of U.S.-
20   manufactured drywall were purchased by EPA from local
     stores in Edison, New Jersey and included in the analysis.
21   Sulfur was detected at 83 parts per millions (ppm) and 119
     ppm in the Chinese drywall samples.  Sulfur was not detected
22   in the four US-manufactured drywall samples.

23       The drywall sample manufacturers and product names are as
     follows: US Gypsum/Hamilton (US); PROROC/Certainteed
24   (US); National Gypsum/Gold Bond (US); GP/Tough Rock
     (US); Knauf/33928-2005 (China); and MIC/33966-12077

25
_____

26   [1]  When examining a Rule 12(b)(6) motion to dismiss, courts may properly consider
     "matters of which a court may take judicial notice." *Zucco Partners, LLC v. Digimarc*
27   *Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  Government publications are the proper subject
     of judicial notice. *See, e.g., Oregon Natural Desert Ass'n v. BLM*, 531 F.3d 1114, 1133-
28   34 (9th Cir. 2008) (taking judicial notice of governmental publication); *Corrie v.*
     *Caterpillar, Inc.*, 503 F.3d 974, 978 (9th Cir. 2007) (same).

(China).

U.S. E.P.A., *Drywall Sample Analysis* (May 7, 2009), at 4 (emphasis added) (attached hereto as Exhibit 2), available at http://www.epa.gov/oswer/docs/chinesedrywall.pdf.

Similarly, a recent study commissioned by the CPSC reports on an elemental analysis of Chinese-manufactured drywall and non-Chinese-manufactured drywall (including American-made drywall) and concludes, contrary to Plaintiff's speculation, that "all the measurements of elemental sulfur and non-Chinese drywall samples were non-detects." *See* Garland & Greene, Division of Hazard Analysis, U.S. Consumer Product Safety Commission, *Statistical Analysis of the Chemical Screening of a Small Sample of Unused Chinese and Non-Chinese Drywall* (10/28/09 Draft), at 10 (attached hereto as Exhibit 3), available at http://www.cpsc.gov/info/drywall/TabA.pdf.

The Florida Department of Health also commissioned a study to analyze samples of Chinese-manufactured drywall and American-made drywall (including National Gypsum drywall).  The study reports as follows:

> In summary, the odor that has been described by investigators and homeowners in Florida residences originated from the emission of volatile sulfur compounds.  <u>There is a distinct difference in drywall that was manufactured in the United States and those that were manufactured in China.</u>  The Chinese samples contained traces of strontium sulfide inclusions and more organic material than the [National Gypsum] Gridmarx sample (United States).  However, it is not yet known if either contributed to the odor.  <u>The Chinese samples give off a sulfur odor when exposed to extreme heat and moisture.</u>

*Report on Florida Drywall Samples*, Unified Engineering, Inc. (Mar. 17, 2009) (Commissioned by Florida Dep't of Health), at 5 (emphasis added) (attached hereto as Exhibit 4), available at http://www.myfloridaeh.com/community/indoor-air/drywall.html.

Finally, the Centers for Disease Control has reported the following with respect to the health-related component of the investigation:

> CPSC is leading the federal investigation into complaints about imported drywall. . . . CDC and ATSDR are working with other federal and stated agencies to identify what chemicals are in the drywall and if these chemicals are a health risk to persons living in homes containing this drywall.

QB\690022.00013\9593602.2

. . . .

> State and federal agencies are testing the air inside some homes in Florida, Louisiana, Virginia, Alabama, and Mississippi. They are testing homes in which homeowners suspect they have contaminated drywall and, for comparison, other homes in which no problems have been reported. <u>State and federal agencies will evaluate these results to determine whether there is a health problem. . . . Until federal agencies get more information from the indoor air testing, it is not possible to determine if the symptoms people are experiencing are possibly from drywall.</u>

CDC, *Imported Drywall and Your Home* (2009) (emphasis added) (attached hereto as Exhibit 5), available at http://www.cdc.gov/nceh/drywall/docs/ImportedDrywalland YourHome.pdf.

With the foregoing as context, it is not surprising that every single one of the Complaint's factual allegations is based "upon information and belief." (*See* Compl. Opening Paragraph). Cloaked with this disclaimer, the Complaint hypothesizes that "American drywall," including drywall manufactured by National Gypsum, is "defective." But the Complaint does not contain a single factual allegation to support Plaintiff's hollow speculation that his drywall is "defective" or differentiate his drywall from that tested by the government agencies.

Based upon a series of "information and belief" allegations, Plaintiff has sued on behalf of himself and a putative class of "[a]ll owners and residents of homes in the United States that contain defective Drywall manufactured or sold by Defendants that emits excessive amounts of sulfur as well as any individual or entity that paid for or performed repairs of any damage caused by the drywall." (Compl. ¶ 13). The Complaint advances legal claims of negligence, breach of unspecified express and implied warranties, fraudulent concealment, fraudulent misrepresentation and unjust enrichment. A close review of the allegations, however, establishes that Plaintiff has failed to state a claim for relief under any of these theories:

First, because every factual allegation in the Complaint is based entirely upon information and belief, each count in the Complaint fails to rise above the level of

1   "speculative," "conceivable" or "possible" and "state a claim to relief that is plausible on

2   its face," as required by *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

3        Second, even if the Court were to credit the allegations pleaded "upon information

4   and belief," the Complaint fails to plead facts to support required elements of its legal

5   claims, including damages and causation.   Instead, the Complaint is replete with legal

6   conclusions and formulaic recitations of the elements of each cause of action, which are

7   not entitled to an assumption of truth.

8        Third, the Complaint fails to state a claim for relief as to its fraud and

9   misrepresentation claims (Counts IV-VI).   To state a claim for relief under these legal

10   theories, Plaintiff must allege facts to permit a plausible inference that he heard or saw the

11   terms of a representation and relied on them when purchasing his product.   But the

12   Complaint fails to allege that Plaintiff ever heard or saw the terms of any specific

13   representation, much less relied on them.   In all events, the Complaint fails to allege fraud

14   with the requisite specificity in that it lacks any details concerning the "who, what, when,

15   where and how" of the alleged fraud, as required under Fed. R. Civ. P. 9(b).

16        Fourth, Arizona's privity requirement precludes Plaintiff from pursuing claims for

17   breach of express and implied warranty (Counts II and III) against National Gypsum.

18        Fifth, Plaintiff's fraudulent concealment claim (Count IV) fails for the additional

19   reason that National Gypsum's alleged silence, absent a duty to disclose, is not actionable

20   as fraud.   Under Arizona law, a duty to disclose for purposes of fraud arises only between

21   parties who are in a confidential or fiduciary relationship, neither of which is alleged here.

22        Finally, the Complaint fails to state a claim for unjust enrichment (Count VII)

23   because it advances a novel, "quasi-tort" theory that is not cognizable as a matter of law.

24   Unjust enrichment is a quasi-*contractual* remedy, and the Complaint fails to plead its

25   essential elements.

26   **II.   ALLEGATIONS IN THE COMPLAINT**

27        As the Complaint's opening paragraph makes clear, "[a]ll facts contained in this

28   complaint are alleged upon information and belief and based upon investigation of

-6-

counsel." The Complaint does not state what this reported investigation entailed or, for instance, whether it included a review of the previously discussed investigation of drywall. Nevertheless, with a global "information and belief" qualifier, the Complaint speculates that there is a "significant problem" in the United States with "American Drywall." (Compl. ¶¶ 1, 7). The Complaint's only paragraph specific to Plaintiff alleges in pertinent part as follows:

> Plaintiff made renovations to his home beginning in 2008 using defective Drywall manufactured by Defendant National Gypsum and purchased by Defendant Lowe's. Plaintiff purchased defective Drywall from the Lowe's store in Lake Havasu, Arizona in May 2008. Plaintiff subsequently installed the defective Drywall in his home and sustained damages to his home, personal property and those residing in the home.

(Id. ¶ 4). The Complaint does not contain any factual allegations to support the conclusory statement that Plaintiff "sustained damages," and it fails to allege facts to support an inference that any such identified damages were caused by National Gypsum drywall. Indeed, paragraph four alleges nothing more than the mere presence of National Gypsum drywall in Plaintiff's home where he allegedly sustained unidentified damages.

The Complaint alleges – in the abstract – that "American drywall" causes "health consequences including, among other things, respiratory problems, eye irritation and nose bleeds," as well as "damage to home structures and mechanical systems, such as, copper piping, refrigeration coils, air conditioner coils, and electrical wiring, as well as personal and other property, such as personal electronics, appliances and jewelry." (Id. ¶ 1). But the Complaint fails to allege that Plaintiff sustained any of these damages to his person or his property. The Complaint does not allege any specific facts concerning, for instance, blackening of any metal structures, wiring or personal property in Plaintiff's home. (Id. ¶ 4). Nor does it allege any specific facts concerning, for instance, "respiratory problems, eye irritation and nose bleeds" with respect to Plaintiff. (Id.).

Similarly, although the Complaint alleges – in the abstract – that the American drywall contains "high levels of sulfur" (id. ¶ 1), it fails to allege any facts that could

1   support an inference that *Plaintiff's* drywall contained a "high level of sulfur."  Instead,

2   the Complaint alleges that the drywall in Plaintiff's home is "defective," without any

3   accompanying facts about Plaintiff's drywall.

4         Finally, although Plaintiff advances claims grounded in fraud and breach of express

5   warranty, the Complaint fails to allege who said what to whom, the form of any such

6   communication, when and where it occurred, whether Plaintiff ever heard or saw the

7   terms of any such communication, and what, if anything, Plaintiff did in reliance on it.

8         As discussed further below, the Complaint fails to state a plausible claim for relief

9   under any of its legal theories.

10   **III.   LEGAL STANDARD**

11         A court should dismiss a complaint under Fed. R. Civ. P. 12(b)(6) where a plaintiff

12   fails to allege facts that are sufficient to establish all of the essential elements of its claims.

13   *See* generally *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

14         "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

15   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

16   129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility

17   standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully";

18   rather it demands sufficient factual allegations for "the court to draw the reasonable

19   inference that the defendant is liable for the misconduct alleged." *Id.* at 1950.  "Where a

20   complaint pleads facts that are 'merely consistent with'" a defendant's liability, it "stops

21   short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*

22   (quoting *Twombly*, 550 U.S. at 557).

23         The U.S. Supreme Court recently elaborated upon the "[t]wo working principles"

24   that underlie *Twombly*:

25         First, the tenet that a court must accept as true all of the
      allegations contained in a complaint is inapplicable to legal

26         conclusions.  Threadbare recitals of the elements of a cause of
      action, supported by mere conclusory statements, do not

27         suffice.  Rule 8 marks a notable and generous departure from
      the hyper-technical, code-pleading regime of a prior era, but it

28         does not unlock the doors of discovery for a plaintiff armed

with nothing more than conclusions.   Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "shown" – that the pleader is "entitled to relief."

*Iqbal,* 129 S. Ct. at 1949-50.  "It is no answer to say that a claim just shy of a plausible entitlement can be weeded out early in the discovery process . . . ." *Twombly*, 550 U.S. at 559.

In addition, for fraud-based claims, Fed. R. Civ. P. 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud."  See Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b)'s particularity requirement, a plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (requiring "who, what, when, where, and how of the misconduct charged").

## IV.   ARGUMENT

### A.   The Complaint Fails To State A Plausible Claim For Relief Under *Twombly* and *Iqbal.*

The Complaint fails to "raise the right to relief above a speculative level" and thus fails to clear *Twombly's* plausibility threshold for three principal reasons.  First, the entire Complaint is expressly based "upon information and belief."  The Complaint is therefore inherently speculative, and none of its "allegations" are entitled to an assumption of truth. Second, the Complaint fails to state a claim for relief as to its only named Plaintiff, who has pleaded bald legal conclusions in an attempt to satisfy the necessary damages and causation elements of each of his claims.  Further, instead of identifying damages that Plaintiff himself sustained, the Complaint identifies hypothetical damages that unidentified class members allegedly might sustain.  Under *Twombly* and *Iqbal,* such

1    assertions are not entitled to an assumption of truth.  Third, Plaintiff's fraud-based claims

2    also fail for lack of particularity under Rule 9(b).

3                    1.    Because Every Paragraph In The Complaint Is Alleged "Upon
                          Information And Belief," The Complaint Fails To Satisfy The
4                          Plausibility Standard Set Forth In *Twombly* And *Iqbal*.

5          The Complaint fails to state a plausible claim for relief because every one of its

6    allegations is based "upon information and belief."  (*See* Compl. Opening Paragraph).

7    Allegations pleaded in this manner fail to satisfy *Twombly's* plausibility standard.[2]

8          For example, in *IDEA v. People for the Ethical Treatment of Animals,* the court

9    granted the defendant's motion to dismiss plaintiff's claims under the Copyright Act

10   where plaintiff alleged acts of infringement "upon information and belief."  08-cv-6195,

11   2009 WL 2850230, at *4 (S.D.N.Y. Aug. 28, 2009).  The court held that infringement

12   allegations pleaded on information and belief, "without factual allegations," are "not

13   entitled to the assumption of truth" under *Iqbal*.  *Id*.  The court stated that where the

14   plaintiff "offer[ed] no factual allegations to support [its theories of liability]," the

15   allegations were not plausible, and there was no more than "a sheer possibility" that the

16   defendant infringed the alleged copyright.

17         The same reasoning compels dismissal here.  Because Plaintiff has pleaded its

18   claims solely "upon information and belief," they fail to cross "the line from conceivable

19   to plausible," in violation of *Twombly* and *Iqbal*.  *See Iqbal,* 129 S. Ct. at 1951 (citing

20   *Twombly*, 550 U.S. at 557).  Accordingly, the Complaint should be dismissed.

21

22   _____
     [2] *See, e.g., Twombly,* 550 U.S. at 551 (stating that complaint failed to "state a claim to
23   relief that is plausible on its face" where allegation that defendant entered an anti-
     competitive conspiracy was made "upon information and belief"); *Tracy v. NVR, Inc.*, No.
24   04-cv-6541L, 2009 WL 3647862, at *2 (W.D.N.Y. Nov. 5, 2009) (granting motion to
     dismiss where plaintiff's allegations were "solely upon information and belief, and
     without any supporting details"); *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-cv-02528,
25   2009 WL 3217394, at *15 (D. Colo. Sept. 30, 2009) (noting allegations based "upon
     information and belief" were "conclusory allegations . . . not entitled to the assumption of
26   truth"); *IDEA  v. People for the Ethical Treatment of Animals*, 08-cv-6195, 2009 WL
     2850230, at *4 (S.D.N.Y. Aug. 28, 2009) (dismissing Complaint where
27   allegations were based "upon information and belief"); *Amara v. ATK, Inc.*, No. 08-cv-
     00378, 2009 WL 2730528, at *5 (S.D. Ohio Aug. 26, 2009) (dismissing Complaint
28   because "essentially each paragraph" was alleged "upon information and belief").

1

          2.      The Complaint Also Fails To Plead Damages And Causation As To Its Only Named Plaintiff.

2

3         The Complaint also fails to plead facts to support the required damages and

4 causation elements of every legal claim it advances.[3]  Named plaintiffs who purport to

5 represent a class "must allege and show that they personally have been injured, not that

6 injury has been suffered by other, unidentified members of the class to which they belong

7 and which they purport to represent." *Panchita Hodgers-Durgin v. Lopez,* 199 F.3d 1037,

8 1045 (9th Cir. 1999) (*quoting Lewis v. Casey,* 518 U.S. 343, 357 (1996)).   Moreover,

9 allegations of hypothetical or speculative damages are insufficient to allege legally

10 cognizable damages. *See, e.g., Coghlan v. AquaSport Marine Corp.,* 73 F. Supp. 2d 769,

11 772 (S.D. Tex. 1999) (dismissing plaintiff's claims where plaintiff failed to allege actual

12 damages and instead postulated "some purely hypothetical or inchoate injury which may

13 or may not manifest itself in the future").

14         First, the Complaint fails to allege facts that could support an inference that the

15 named Plaintiff personally sustained damages.   Instead, the Complaint improperly

16 commingles the named Plaintiff's damage assertions with equally nebulous damage

17

18 [3] Plaintiff appears to assert his individual claim under Arizona law.  Specifically, Plaintiff alleges that (a) he is an Arizona resident who purchased drywall at a Lowe's store located in Lake Havasu, Arizona (Compl. ¶ 4); (b) he installed the drywall at his home in Yucca,

19 Arizona; and (c) unidentified damages occurred to his home (*id.*).  Further, Plaintiff alleges that "material omissions and misrepresentations and breaches of warranties" by

20 National Gypsum "emanat[ed]" from Arizona. (*Id.* ¶ 3).  *See, e.g., Bernal v. Daewoo Motor America, Inc.,* No. 09-1502, 2009 WL 3837195, at *2 (D. Ariz. Nov. 16, 2009)

21 (applying Arizona law where Arizona is "central" to the litigation); *Vint v. Element Payment Servs.,* No. 09-00078, 2009 WL 1749605, at *2-3 (D. Ariz. June 18, 2009)

22 (same).   Accordingly, National Gypsum's Motion to Dismiss addresses Arizona law. National Gypsum does not agree that Arizona law would apply to claims of all putative

23 class members.

24 Under Arizona law, damages and causation are required under each legal claim advanced by Plaintiff.  *See Taeger v. Catholic Family & Community Servs.,* 995 P.2d 721, 730

25 (Ariz. Ct. App. 1999) (negligence); A.R.S. § 47-2313 (breach of express warranty); *Dietz v. Waller,* 685 P.2d 744, 749 (Ariz. 1984) (breach of implied warranty); *St. Dillon v.*

26 *Zeneca Corp.,* 42 P.3d 598, 602-03 (Ariz. Ct. App. 2002) (fraudulent misrepresentation); *Wells Fargo Bank v. Arizona Laborers,* 38 P.3d 12, 34-35 (Ariz. 2002) (fraudulent

27 concealment); *St. Joseph's Hospital & Med. Ctr. v. Reserve Life Ins. Co.,* 742 P.2d 808, 813 (Ariz. 1987) (negligent misrepresentation); *Martinelli v. Petland, Inc.,* No 09-529,

28 2009 WL 2424655, at *6 (D. Ariz. Aug. 7, 2009) (unjust enrichment).

1   assertions on behalf of unidentified putative class members.  Specifically, the Complaint

2   repeatedly recites the phrase "physical and economic damages" without alleging any facts

3   concerning alleged damages to Plaintiff or his property.  (E.g., Compl. ¶¶ 29, 36, 41, 49,

4   54).  Although Plaintiff theorizes that damages may occur as a result of American-made

5   drywall (e.g., Compl. ¶¶ 1, 8-12), he does not allege any facts regarding actual damages to

6   his property or alleged personal injuries to him (e.g., *id.* ¶ 4, 29, 36, 41, 48, 54, 58).  For

7   example, the Complaint alleges that "[n]early every appliance in a house is susceptible to

8   damage" *(id.* ¶ 11) (emphasis added), but it does not allege that any of Plaintiff's property

9   was damaged.  Because of the speculative nature of the damages asserted, and Plaintiff's

10  failure to allege any facts concerning damages that he allegedly experienced, the

11  Complaint fails to state a plausible claim for relief under any of its legal theories.

12      Second, even if the Complaint had alleged facts concerning damages to Plaintiff, it

13  still fails to allege facts to support an inference that such damages were caused by

14  National Gypsum drywall.  The Complaint's only allegation specific to the named

15  Plaintiff is paragraph four, which alleges that Plaintiff "installed the defective Drywall in

16  his home and sustained damages to his home, personal property and those residing in the

17  home." (Compl. ¶ 4).  There is no allegation that National Gypsum drywall caused the

18  unspecified damages to Plaintiff's "home, personal property and those residing in the

19  home," only that it was present in the home.  The Complaint's remaining causation

20  allegations are conclusory and improperly commingle allegations regarding the named

21  Plaintiff with allegations regarding unidentified "members of the class." (Compl. ¶¶ 28-

22  29, 36, 41, 48-49, 54, 58, 62).

23      Finally, to the extent that the Complaint speculates – in the abstract – that

24  American-made drywall is defective because it "emits, among other things, high levels of

25  sulfur" (e.g., Compl. ¶ 8), these allegations are insufficient to satisfy Plaintiff's individual

26  pleading burden, which he has failed to meet by, among other things, failing to allege

27  facts that could permit a reasonable inference that his drywall is defective in some way.

28  Further, Plaintiff's vague speculation regarding "high levels of sulfur" in "American

-12-

1   drywall" is not entitled to an assumption of truth because (a) it is based solely on

2   information and belief, and (b) it is contradicted by the previously discussed governmental

3   analyses published on the subject to date.  Courts "need not accept as true allegations

4   contradicting documents that are . . . properly subject to judicial notice." *Lazy Y Ranch*

5   *Ltd. v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

6           3.      Plaintiff's Claims Of Fraud And Negligent Misrepresentation
                    (Counts IV – VI) Fail To Plead Additional Necessary Facts.
7

8           Plaintiff has also failed to plead claims for fraudulent concealment, fraudulent

9   misrepresentation and negligent misrepresentation with the required level of particularity

10  required by Federal Rule of Civil Procedure 9(b).  The Ninth Circuit requires that claims

11  for fraudulent concealment, fraudulent misrepresentation and negligent misrepresentation

12  be pleaded with particularity.[4]

13          Here, the Complaint fails to adequately plead a claim for fraudulent concealment,

14  fraudulent misrepresentation or negligent misrepresentation for three reasons: (1) the

15  Complaint fails to allege the who, what, when, where and how of the alleged

16  misrepresentation; (2) the Complaint fails to allege that Plaintiff heard or saw and relied

17  upon the terms of the alleged misrepresentation; and (3) the Complaint improperly fails to

18  differentiate its allegations as to each defendant.

19          First, Plaintiff has failed to allege any specific misrepresentations by National

20  Gypsum to support its claims.  To maintain a cause of action for fraud under Arizona law,

21  a plaintiff must sufficiently plead: (1) a representation; (2) its falsity; (3) its materiality;

22  _____

23  [4] *See 389 Orange Street Partners v. Arnold,* 179 F.3d 656, 663 (9th Cir. 1999) (requiring
    that fraudulent concealment and misrepresentations be pleaded with particularity);
24  *Sweeney v. Darricarrere,* No. 09-00266, 2009 WL 2132696, at *12 (D. Ariz. July 14,
    2009) (requiring that negligent misrepresentation be pleaded with particularity).  A
25  plaintiff must "state the time, place, and specific content of the false representations as
    well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v.*
26  *Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Vess v. Ciba-*
    *Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (holding averments of fraud must
27  state the "who, what, when, where, and how of the misconduct charged").  In addition,
    Rule 9(b) does not permit a plaintiff to "lump multiple defendants together," but rather
28  requires a plaintiff to differentiate his allegations to sufficiently put each defendant on
    notice. *Sweeney,* 2009 WL 2132696, at *12.

QB\690022.00013\9593602.2

(4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; and (9) a consequent and proximate injury. *Arnold & Assocs., Inc. v. Misys Healthcare Sys.,* 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003). To state a cause of action for negligent misrepresentation, a plaintiff must plead that: (1) defendant gave false information intended for the guidance of others; (2) defendant failed to exercise reasonable care or competence in obtaining or communicating the information; and (3) plaintiff justifiably relied upon such false information to its detriment. *Id.* In addition, the plaintiff must show that the defendant's misrepresentation caused the alleged damages. *Alaface v. National Investment Co.*, 892 P.2d 1375, 1387-88 (Ariz. Ct. App. 1994). Causation is shown by establishing plaintiff's reliance on defendant's misrepresentations. *Id.*

For example, in *Arnold & Associates,* a plaintiff's claims were dismissed where it alleged that the defendant fraudulently and negligently misrepresented facts, but failed to specify the identities of the individual speakers of the alleged misrepresentations, dates or times of the misrepresentations, or general circumstances surrounding the misrepresentations. 275 F. Supp. 2d at 1029. Similarly here, the Complaint fails to identify the required who, what, when, where and how of the alleged fraud. Plaintiff alleges only that National Gypsum misrepresented that the "drywall was safe, efficacious, well tested and of high quality" (Compl. ¶ 51); "fundamentally misrepresented material facts regarding the characteristics of the [d]rywall" (id. ¶ 56); and "fraudulently concealed that Defendants' [d]rywall was defective, unsafe and poorly manufactured" (id. ¶ 44). The Complaint is devoid of any allegations concerning: (a) who allegedly made the representations; (b) to whom the statements were made; (c) the specific terms of any misrepresentation to Plaintiff; (c) the date, place and circumstances under which the representation was made; and (d) whether the representation was oral or in writing. In view of these deficiencies, the Complaint does not even begin to comply with the

-14-

1    heightened particularity requirement of Rule 9(b).[5]

2         Second, the Complaint fails to allege facts sufficient to permit an inference that

3    Plaintiff heard or saw, let alone relied on, the terms of any alleged misrepresentation by

4    National Gypsum.   Such allegations are necessary to state a claim for fraudulent

5    concealment, fraudulent misrepresentation or negligent misrepresentation.[6]

6         Here, Plaintiff has failed to adequately allege reliance as to any of his fraud claims.

7    With respect to his claims of fraudulent concealment and negligent misrepresentation, the

8    Complaint completely fails to allege reliance.   Similarly, the fraudulent misrepresentation

9    claim alleges in conclusory fashion that "[d]efendants' drywall was installed in Plaintiff's

10   home in reliance on the veracity of the above-mentioned fraudulent misrepresentations"

11   (*id.* ¶ 53).   This vague and conclusory statement, unsupported by any factual allegations

12   that Plaintiff heard or saw the terms of an alleged misrepresentation when purchasing his

13   drywall, is not entitled to an assumption of truth under *Twombly* and *Iqbal* and is not

14   pleaded with the required specificity under Rule 9(b).   Facts regarding the terms of an

15   alleged misrepresentation that Plaintiff heard or saw and relied on would be within his

16   personal knowledge.   Failure to plead such facts therefore warrants dismissal of these

17   claims.

18   _____

19   [5] *See, e.g., Sweeney*, 2009 WL 2132696, at *13 (dismissing plaintiff's misrepresentation claims where plaintiff failed to specify statements by the defendants they alleged to be fraudulent or negligent); *Frew v. Coit Servs., Inc.*, No. 07-1372, 2007 WL 2903026, at * 4

20   (D. Ariz. 2007) (dismissing plaintiff's fraud claim where plaintiff failed to specify the time, date, or location of the alleged representations); *Hearn v. R.J. Reynolds Tobacco*

21   *Co.*, 279 F. Supp. 2d 1096, 1113 (D. Ariz. 2003) (dismissing plaintiff's fraudulent concealment claim for failure to allege reliance with particularity required by 9(b) where

22   plaintiff only broadly alleged that she relied upon defendant's omission of facts concerning dangers in smoking); *Ness v. W. Sec. Life Ins. Co.*, 851 P.2d 122, 127 (Ariz.

23   Ct. App. 1992) (rejecting plaintiff's common law fraud claim where plaintiff failed to allege reliance on defendant's representations with particularity as required by Ariz. R.

24   Civ. P. 9(b)).

25   [6]   *See Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1113 (D. Ariz. 2003) (noting requirement that plaintiff allege reliance on defendants' statements or

26   omissions); *see also Hall v. Nat'l Union Fire Ins. Co.*, No. 08-cv-1195, 2009 WL 4795826, at *2-4 (S.D. Cal. Dec. 8, 2009) (dismissing plaintiff's negligent

27   misrepresentation, intentional misrepresentation and concealment claims where plaintiff failed to adequately allege reliance).

28

1   Third, the Complaint fails to differentiate its allegations to each specific defendant,

2   as required by Rule 9(b). *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)

3   (noting plaintiff must "inform each defendant separately of the allegations surrounding his

4   alleged participation in the fraud"). In *N'Genuity Enter. Co. v. Pierre Foods, Inc.*, the

5   court dismissed the plaintiff's fraud claims where the plaintiff directed all allegations of

6   fraudulent conduct against "defendant" generally, rather than differentiating each claim

7   "such that each defendant is apprised of the specific misconduct with which he is

8   charged." No. 09-00385, 2009 WL 2905722, at *12 (D. Ariz. Sept. 9, 2009). The same

9   result is warranted here because Plaintiff has premised his claims for fraudulent

10  concealment, fraudulent misrepresentation and negligent misrepresentation on

11  undifferentiated allegations directed to "all defendants." (*E.g.*, Compl. Opening

12  Paragraph and ¶¶ 8, 12, 44, 51, 56).

13      **B.     Arizona's Privity Requirement Bars Plaintiff's Claims For Breach Of
14             Express Warranty And Breach Of Implied Warranty Against National
               Gypsum (Counts II and III).**

15      Plaintiff's claims for breach of express and "implied warranty" should be

16  dismissed because Plaintiff has failed to allege that he is in privity of contract with

17  National Gypsum.[7]  The Arizona U.C.C. governs Plaintiff's warranty claims. *See Flory*

18  *v. Silvercrest Indus.*, 633 P.2d 383, 387 (Ariz. 1981). Under Arizona law, privity of

19  contract is required for claims alleging breach of express and implied warranty of

20  merchantability. *See id.* at 387; *see also, e.g., Haughland v. Winnebago Indus.*, 327 F.

21  ───────────────────
    [7]      With regard to the express warranty claim, Plaintiff has failed to allege who said
22  what to whom and under what circumstances. The express warranty claim formulaically
    alleges that "Plaintiff and the proposed Class *and/or* their representatives relied on this
23  express warranty," the terms of which are only vaguely identified. (Compl. ¶ 35
    (emphasis added)). The Complaint does not allege, for instance, that an express warranty
24  accompanied the drywall that Plaintiff reportedly purchased or that he heard or saw and
    relied on the terms of an express warranty. Plaintiff's failure to allege these essential facts
25  is an additional, independent basis that warrants dismissal of his express warranty claim.
    *See, e.g., In re: Bisphenol-A Polycarbonate Plastic Prods. Liab. Litig.*, No. 08-1967, 2009
26  WL 3762972, at *6 (W.D. Mo. Nov. 9, 2009) (dismissing plaintiff's express warranty
    claim where plaintiff failed to comply with *Iqbal* because he did not allege that he knew
27  the misrepresentation was made); *Moncada v. Allstate Ins. Co.*, 471 F. Supp. 2d 987, 997
    (N.D. Cal. 2006) (rejecting plaintiffs' breach of express warranty claim where plaintiffs
28  presented no evidence that they actually read or relied upon statements on defendant's
    website).

Supp. 2d 1092, 1097 (D. Ariz. 2004).[8] Here, Plaintiff alleges that he purchased drywall not from National Gypsum but from Lowe's. (Compl. ¶ 4). Accordingly, Plaintiff's warranty claims against National Gypsum should be dismissed.[9]

**C. The Court Should Dismiss Plaintiff's Claims For Fraudulent Concealment (Count IV) Because Plaintiff Has Not Alleged A Fiduciary or Confidential Relationship That Could Give Rise To A Duty To Disclose.**

Plaintiff has failed to state a claim for fraudulent concealment because Plaintiff has not alleged facts that could give rise to a duty to disclose on the part of National Gypsum. Under Arizona law, fraudulent concealment occurs where a party to a transaction conceals or otherwise prevents the other party from acquiring material information. *Wells Fargo Bank v. Arizona Laborers,* 38 P.3d 12, 34 (Ariz. 2002).[10] Fraudulent concealment by non-

---

[8] The Complaint vaguely alleges that Defendants have breached "implied warranties" without stating what "implied warranty" has been breached. (Compl. ¶¶ 38-40). Although the Complaint's allegations do not remotely plead the elements of a claim for breach of implied warranty for a particular purpose, even assuming that the Complaint could be construed to allege such a claim, Arizona's privity requirement would bar it. *See Pacific Am. Leasing Corp. v. S.P.E. Bldg. Sys., Inc.*, 730 P.2d 273, 279 (Ariz. Ct. App. 1986) (noting "a warranty of fitness for a particular purpose will be implied only where the seller has reason to know of 'the particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . .'" (quoting A.R.S. § 47-21315); *Eck v. Helene Curtis Indus.*, 453 P.2d 366, 369 (Ariz. Ct. App. 1969) (noting privity requirement applies to both implied warranty of merchantability and implied warranty of fitness); *Haugland v. Winnebago Indus.*, 327 F. Supp. 2d 1092, 1095-96 (D. Ariz. 2004) (same).

[9] In addition, Plaintiff has alleged a theory of implied warranty of merchantability that is not cognizable under Arizona law. Under Arizona warranty law, an implied warranty of merchantability warrants that "the goods shall be at least *fit for their ordinary purpose* such that the good would pass without objection in the trade." (emphasis in original) *Nomo Agroindustrial SA DE CV v. Enza Zaden N. Am., Inc.*, 492 F. Supp. 2d 1175, 1184 (D. Ariz. 2007) (citing A.R.S. § 47-2314) (emphasis added). In contrast, the Complaint alleges that "[d]efendants implicitly warranted that the product was safe, efficacious, well tested and of high quality" (Compl. ¶ 38). These assertions overstate the warranty that is implied by operation of Arizona law and therefore allege an implied warranty of merchantability theory that is not cognizable under Arizona law. *See, e.g., Nomo Agroindustrial*, 492 F. Supp. 2d at 1185 (requiring plaintiff bringing implied warranty claim to show that goods were not fit for their ordinary purpose).

10 Arizona common law classifies fraudulent concealment claims into two types: (1) actual concealment and (2) non-disclosure. Actual concealment "is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter." *Wells Fargo Bank*, 38 P.3d at 34 (citing *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000)). Non-disclosure "is characterized by mere silence," where one is under the duty to disclose the matter in

1    disclosure "is characterized by mere silence," where one is under the duty to disclose the

2    matter in question. *Id.* (citing § 551 Restatement (Second) of Torts).

3          Where a plaintiff claims fraudulent concealment in the form of non-disclosure, the

4    plaintiff must allege that the defendant was under a duty to disclose the non-disclosed

5    fact. *Universal Inv. Co. v. Sahara Motor Inn, Inc.,* 619 P.2d 485, 487 (Ariz. Ct. App.

6    1980).   A duty to disclose arises only where there is a confidential or fiduciary

7    relationship between the parties and one party reasonably relies upon the trustworthiness

8    of the other. *Id.* In the absence of such a relationship, there is no duty to disclose and a

9    plaintiff cannot maintain an action for fraudulent concealment in the form of non-

10   disclosure. *Id.*[11]  Here, the Complaint is devoid of any allegation that Plaintiff engaged in

11   a business transaction with National Gypsum, much less that a confidential or fiduciary

12   relationship existed between National Gypsum and Plaintiff.  As in *Universal Investment,*

13   in the absence of a special relationship triggering a duty to disclose, National Gypsum is

14   under no duty to disclose information to Plaintiff capable of giving rise to a fraud claim.

15   Accordingly, Plaintiff is unable to state a claim for fraudulent concealment.

16         Moreover, even if National Gypsum was under a duty to disclose information to

17   Plaintiff, Plaintiff has failed to allege that National Gypsum had actual knowledge of the

18

19   question.  *Id.* (citing § 551 Restatement (Second) of Torts).  Here, Plaintiff frames his
     fraudulent concealment claim as one of non-disclosure.  Specifically, Plaintiff alleges that
     "Defendants knew or should have known" that the drywall was defective, but failed to
20   disclose this information.  (Compl. ¶¶ 45-46).   In addition, Plaintiff alleges that
     "Defendants fraudulently concealed that they had received and/or otherwise learned of
21   complaints regarding the [d]rywall." (*Id.* ¶ 47).  The Complaint does not allege that
     National Gypsum took any affirmative action to hide any information regarding its
22   drywall.  *See, e.g., Wells Fargo Bank,* 38 P.3d at 36 (allegations fit definition of active
     concealment where plaintiff alleged that defendant bank actively strategized to cover up
23   pending collapse of the bank's financial conditions).

24   [11]  *See also Burton v. R.J. Reynolds Tobacco Co.,* 397 F.3d 906 (10th Cir. 2005)
     (holding that "claims that a cigarette manufacturer has not warned of known product
25   dangers are generally not cognizable as fraudulent concealment claims . . . . Rather, they
     are cognizable as failure to warn claims." "To hold otherwise," the court explained
26   "would convert all product manufacturer's duty to warn claims into fraud claims."); *see,
     e.g., In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.,* 113 F.3d 1484,
27   1489, 1497 (8th Cir. 1997) (affirming summary judgment on behalf of Dow Chemical on
     plaintiff's fraudulent concealment claim because the company had no relationship with
28   plaintiff that would have given rise to a duty to disclose).

-18-

1   facts that it allegedly concealed.  Instead, Plaintiff alleges that National Gypsum "knew or

2   should have known" that the drywall was "defective, unsafe, and poorly manufactured,"

3   and then "fraudulently concealed" such information.  Compl. ¶ 45.  Under *Twombly*, this

4   allegation cannot support a claim for fraudulent concealment.  *See, e.g., Iqbal*, 129 S. Ct.

5   at 1954 (noting that although the "knowledge" requirement for fraud claims may be

6   alleged generally, a plaintiff may not "evade the less rigid-though still operative-strictures

7   of Rule 8" by formulaically alleging knowledge).

8         **D.**    **The Court Should Dismiss Plaintiff's Claim for Unjust Enrichment**

                **(Count VII) Because Plaintiff's Novel Unjust Enrichment Theory Is Not**

9                   **Cognizable As A Matter Of Law.**

10         Unjust enrichment is "a form of restitutionary relief available upon either 'implied

11   in fact' contract or quasi-contractual grounds."  *USLife Title Co. of Ariz. v. Gutkin*, 732

12   P.2d 579, 584 (Ariz. Ct. App. 1989).  To state a claim for unjust enrichment, a plaintiff

13   must establish that: "(1) plaintiff conferred a benefit upon the defendant; (2) defendant's

14   benefit is at plaintiff's expense; (3) it would be unjust to allow defendant to keep the

15   benefit."  *Parker v. Witasik*, No. 06-903, 2009 WL 3175016, at *10 (D. Ariz. 2009)

16   (citing Gutkin).

17         Plaintiff's unjust enrichment claim fails for several reasons.  First, the Complaint

18   alleges that Plaintiff purchased drywall not from National Gypsum but from Lowe's.

19   (Compl. ¶ 4).  Therefore, Plaintiff did not confer a direct financial benefit upon National

20   Gypsum.  Under these circumstances, Plaintiff cannot state an unjust enrichment claim

21   against National Gypsum.  *Laborers' & Operating Eng'rs Util. Agreement Health &*

22   *Welfare Trust Fund for Arizona v. Philip Morris, Inc.*, 42 F. Supp. 2d 943, 951 (D. Ariz.

23   1999) (dismissing plaintiff's unjust enrichment claim where plaintiff did "not allege it

24   conferred any benefit on [defendant]").

25         Second, Plaintiff's unjust enrichment theory fails because is pleaded not as a quasi-

26   contractual claim but as a tort claim.  In essence, the Complaint alleges that National

27   Gypsum would be unjustly enriched if permitted to retain profits it earned from

28   manufacture and sale of allegedly defective drywall.  Compl. ¶ 61.  Arizona law does not

1  recognize such a tort-based unjust enrichment theory.  Further, under the Restatement of

2  Restitution, "actions of tort are ordinary not restitutionary . . . they are based primarily

3  upon wrongdoing and ordinarily, through the payment of money, compensate the injured

4  person for the harm suffered by him as a result of the wrongful conduct, irrespective of

5  the receipt of anything by the defendant."  Restatement of Restitution (1937) ch. 7

6  Introductory Note; *see also Steamfitters Local Union No. 420 Welfare Fund v. Int'l Bd. of

7  Painters & Allied Trades,* 171 F.3d 912, 937 (3d Cir. 1999) (dismissing plaintiff's unjust

8  enrichment claim seeking recovery on quasi-tort basis).  Therefore, the Court should

9  dismiss Plaintiff's unjust enrichment claim.

10  In all events, Plaintiff has misconstrued the appropriate remedy under an unjust

11  enrichment theory by seeking compensatory damages.    (Compl. ¶ 62) (seeking

12  "substantial damages, including, but not limited to: the removal and replacement of the

13  defective Drywall and/or the homes; replacement of any and [all] mechanical and

14  structural systems damaged in the homes; replacement of personal and other property

15  damaged; costs of moving to alternative housing while repairs are made; costs of

16  comparable alternative housing; loss of use and enjoyment of their homes; and

17  compensation for reduced value of the homes as a result of perception of the homes as

18  tainted by the defective Drywall").[12]

19  Finally, even assuming that Plaintiff could proceed in its unjust enrichment claim

20  premised upon a quasi-tort basis, Plaintiff's unjust enrichment claims fails for the same

21  reasons that Plaintiff's tort claims fail.  Unjust enrichment is not a separate cause of action

22  that justifies recovery on its own.  *Martinelli v. Petland, Inc.,* No. 09-529, 2009 WL

23  2424655, at *6 (D. Ariz. Aug. 7, 2009).  Rather, unjust enrichment must be brought about

24  by unlawful conduct as defined by law.  *Id. (citing Martis v. Grinnell Mutual Reinsur.*

25  [12] Contrary to the Complaint's implication, recovery under unjust enrichment is not
    compensatory but restitutionary.    "Restitutionary recoveries are not designed to be
26  compensatory; their justification lies in the avoidance of unjust enrichment on the part of
    the defendant." *Renner v. Kehl,* 722 P.2d 262, 266 (Ariz. 1986).  "Thus the defendant is
27  generally liable for restitution of a benefit that would be unjust for him to keep, even
    though he gained it honestly." *Id.*  Here, recovery of damages to *compensate* Plaintiff for
28  damages allegedly sustained as a result of

1   *Co.,* 905 N.E.2d 920, 928 (Ind. Ct. App. 2009)).  Where the underlying claims supporting

2   the unjust enrichment theory are dismissed, the claim for unjust enrichment should also be

3   dismissed.  *Martis,* 905 N.E.2d at 928.  Because Plaintiff has predicated his unjust

4   enrichment claim on tort theories, and because the tort theories underlying Plaintiff's

5   unjust enrichment claim are deficient, it follows that Plaintiff's unjust enrichment claim

6   should be dismissed.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice.

RESPECTFULLY SUBMITTED this 22nd day of January, 2010.

QUARLES & BRADY LLP
Renaissance One, Two North Central Avenue
Phoenix, AZ  85004-2391

By  */s/ Alison Pulaski*
Brian R. Booker
Alison Pulaski

*Attorneys for Defendant National Gypsum Company*

### **CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2010, I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic Filing to the following CM/ECF registrants:

William H. Anderson
Cuneo Gilbert & LaDuca LLP
507 C Street NE
Washington, DC  20002
wanderson@cuneolaw.com
Attorneys for Plaintiff

J. Barton Goplerud
Hudson Mallaney Shilnder & Anderson PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA  50265
jbgoplerud@hudsonlaw.net
Attorneys for Plaintiff

QB\690022.00013\9593602.2

1

Charles J. LaDuca
Cuneo Gilbert & LaDuca LLP

2

507 C Street NE
Washington, DC  20002

3

Charlesl@cuneolaw.com
Attorneys for Plaintiff

4

5

Jack Landskroner
Landskroner Grieco Madden LLC
1360 West 9th Street, Suite 200

6

Cleveland, OH  44113
jack@lgmlegal.com

7

Attorneys for Plaintiff

8

Andrew A. Lemmon
Lemmon Law Firm LLC

9

P.O. Box 904
Hahnville, LA  70057

10

Andrew@lemmonlawfirm.com
Attorneys for Plaintiff

11

12

Michael A. McShane
Audet & Partners
221 Main Street, Suite 1480

13

San Francisco, CA  94105
mmchsane@audetlaw.com

14

Attorneys for Plaintiff

15

Daniel R. Ortega, Jr.
Roush McCracken Guerrero Miller & Ortega

16

1112 East Washington Street
Phoenix, Arizona  85034-1010

17

danny@rmgmo.com
Attorneys for Plaintiff

18

19

Shawn M. Raiter
Larson King LLP
2800 Wells Fargo Place

20

30 East 7th Street
St. Paul, MN  55101

21

sraiter@larsonking.com
Attorneys for Plaintiff

22

23

                                        /s/ Kim Simmons

24

25

26

27

28

QB\690022.00013\9593602.2